IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| SHAWNEEQUA SUMPTER-GIBSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | (JURY TRIAL REQUESTED) |
| | ) | |
| GEORGETOWN HOSPITAL SYSTEM | ) | |
| d/b/a TIDELANDS HEALTH, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## COMPLAINT AND JURY DEMAND

The Plaintiff, Shawneequa Sumpter-Gibson, by and through her attorney, Bonnie Travaglio Hunt of Hunt Law, L.L.C., hereby file the Plaintiff's Complaint pursuant to Title VII and 42 U.S.C. Section 1981, against the Defendant, Georgetown Hospital System d/b/a Tidelands Health, as follows:

## BACKGROUND

Shawneequa Sumpter-Gibson was discriminated against during her employment with the Defendant based on pay. When she complained she was subjected to retaliatory hostile work environment and suffered severe emotional distress as a result of the severe and pervasive treatment received.

That the Plaintiff was hired on November 15, 2015, as a Care Coordinator. During her employment she was promoted on three different occasions. The promotions do not eliminate the discriminatory practice of paying African Americans less as perpetrated by the Defendant. The Plaintiff received twelve pay increases, Seven were merit increases due to exemplary performance, three were from promotions, and one was a market analysis increase. However, at the time of the

1

Plaintiff's constructive discharge due to a hostile work environment, changes in the terms and conditions of her employment she was making significantly less than other younger Caucasian employees with the same or similar duties, less experience, and less education. The Plaintiff was one of two African American Managers in the TCCN Department. Overall, in Tidelands there are 220 managers and only 10 % of those managers are minorities. The Plaintiff through research of the Defendant's pay records that there were several other employees that were younger Caucasian employees making more money per hour that older African American Employees. African American employees that had been employed with the Defendant for a significant or small amount of time were making less than their Caucasian Counterparts. An African American employee with 27 years of employment and had been promoted to management was making less than the new operations manager that was hired in January of 2022. These overall issues created a culture of discriminatory behavior.

## NATURE OF THE ACTION

1.    This action is brought by the Plaintiff pursuant to Title VII of the Civil Rights Act of 1964 of the United States.

2.    This action is brought by the Plaintiff pursuant to 42 U.S.C. Section 1981 of the United States.

3.    This action is brought by the Plaintiff pursuant to the South Carolina Human Affairs Laws. The purpose of the South Carolina Human Affairs Law as set forth by the General Assembly sets forth the following:

*"The General Assembly declares the practice of discrimination against an individual because of race, religion, color, sex, age, national origin, or disability as a matter of state concern and declares that this discrimination is unlawful and in conflict with the ideals of South Carolina and the nation, as this discrimination interferes with opportunities of the individual to receive employment and to develop according to the individual's own ability and is degrading to human dignity. The*

*General Assembly further declares that to alleviate these problems a state agency is created which shall seek to eliminate and prevent discrimination because of race, religion, color, sex, age, national origin, or disability."*

4.    The jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights guaranteed by federal law and state law which rights provide for injunctive and other relief for illegal discrimination in employment.

5.    During the Plaintiff's employment she suffered severe and/or pervasive harassment at the Defendant's facility.

6.    This action is brought pursuant to Federal Law and the laws of South Carolina.

## **PARTIES**

7.    The Plaintiff is an individual who resided in the State of South Carolina at all times relevant to this action.

8.    At all times, relevant to the allegations in this complaint, the Plaintiff was employed at a facility operated by the Defendant in the State of South Carolina.

9.    On information and belief, Defendant is an entity conducting business and affecting commerce in the state of South Carolina properly within the jurisdiction of the Court.

10.    At all times, relevant to the allegations in this Complaint, the Defendant employed more than 20 persons in the State of South Carolina.

11.    At all times, relevant to the allegations in this Complaint, the Defendant operated a facility in the State of South Carolina.

## **JURISDICTION AND VENUE**

12.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 as this matter presents a federal question.

13.     Jurisdiction of this cause arises under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. Section 2000e-2(a) and Section 2000e-3(a), as amended by the Civil Rights Act of 1991 (CRA Section 91), 42 U.S.C. Section 1981A *et seq.*

14.     This Court further has jurisdiction in that the amount in controversy exceeds the jurisdiction of this Court according to proof at trial.

15.     The Charleston Division is the proper venue for this action pursuant because this is the District and Division in which a substantial part of the events or omissions giving rise to the claims occurred.

### Procedural Prerequisites

16.     The Plaintiff filed a charge of discrimination against the Defendant with the South Carolina Human Affairs Commission (SCHAC) and the Equal Employment Opportunity Commission ("EEOC") on April 25, 2023, alleging race discrimination and age discrimination.

17.     The Charge set forth the following:

*"I was subjected to disparate treatment including harassment and unfavorable terms/conditions from on or about January 2022 through the date of my constructive discharge on or about December 7, 2022.*

*"I am a fifty-year-old African American hired by Respondent in 2015 as a care coordinator. In December 2019, I was promoted from palliative care coordinator to a salaried case network manager position in the community health resources department. The Assistant and senior directors of my department were both Caucasian and, upon information and belief, under age forty.*

*"On or about January 5, 2022, the senior director announced the hiring of a new operations manager (younger Caucasian). In October 2022, I discovered this new manager had been hired and paid at a substantially higher salary than me despite having less education and no background in healthcare. Upon information and belief, I am not the only African American employee being comparatively underpaid. A community health worker in my department with a seventeen-year tenure reported that a new community health worker (Caucasian) was hired at two dollars more per hour.*

*"Additionally, when Respondents covid unit opened in early 2020 through the time it shut down in August 2022, I was given extra duties working in the covid unit but not paid for the additional duties or hours worked.*

*"The assistant director and senior directors of my department began sending me what I perceived as harassing and intimidating emails from on or about August 3, 2022, through on or about October 21, 2022. In August 2022, the assistant director reprimanded me for not sending information related to a grant application that had already been provided and assigned me additional work which was the responsibility of a coworker. From August 2022 through October 2022, she and the senior director gave me extra assignments due in an unreasonable time frames. They also micromanaged me to reports, assessments, or work products that normally be in my discretion. In mid-October, the assistant director demanded that my team modify its objectives and our caseload by December 2022. ON or about October 21, 2022, the assistant director asked me to reformat and resubmit a project by close of business the following Monday October 24, 2022. The same day, the senior director reprimanded me as to my decision on the appropriate disciplinary response to one of my employees' absences despite my following Respondent's policy. ON or about October 25, 2022, I sought medical treatment through the employee assistance program and reported a "hostile work environment" to my doctor. I received ongoing treatment for my medical conditions and my doctor formally excused me from work from on or about October 25, through October 31, 2022. I did not return to work thereafter, using medical leave or paid time off in the period from October 25, 2022 through December 7, 2022.*

*I believe Respondent treated African Americans less favorably than Caucasian employees. On or about December 2, 2022, I attended a department meeting held in response to an investigation of the NAACP, during which I joined in other employee' complaints of race discrimination by Respondent. I specifically complained about the disparity in pay between African Americans and Caucasians at that time. I was not offered a raise, and I do not feel the issues were being adequately addressed by Respondent. Moreover, my doctor did not recommend I return to work at that time due to my medical conditions. Therefore, on or about December 7, 2022, I resigned effective immediately as any reasonable person in similar circumstances would do. I believe Respondent discriminated against me due to my race and my age, as I was approaching age fifty.*

*Therefore, I believe I was discriminated against because of my race (African American), age (49 as of my date of discharge) in violation of the South Carolina Human Affairs Law, as amended, and Title VII of the US Civil Rights Act of 1964, as amended, and the Age Discrimination in Employment Act."*

18.    On September 26, 2024, the SCHAC issued its right to sue stating "No cause. The

Commission is unable to conclude, based upon the information, obtained during its

investigation that there has been a violation of the Human Affairs Law, Section 1-13-10, et seq, of the SC Code of Laws of 1976, as amended.

19.     The EEOC issued its right to sue to the Plaintiff on October 16, 2024.  That the Right to Sue set forth the EEOC issues the following determination:

*NOTICE TO THE PERSON AGGRIEVED:*

*DISMISSAL OF CHARGE*
*The EEOC issues the following determination:  The EEOC will not proceed further within investigation an makes no determination about whether further investigation would establish violations of the statute.  This does not mean the claims have no merit.  This determination does not certify that the respondent is in compliance with the statutes.  The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.*
*The EEOC has adopted the findings of the state or local fair employment practices agency that investigated your charge.*

*NOTICE OF YOUR RIGHT OF SUE*
*This is official notice from the EEOC of the dismissal of your charge and of your right to sue.  If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, your lawsuit must be filed within 90 days of your receipt of this notice.  Receipt generally occurs on the date that you (or your representative) view this document.  You should keep a record of the date you received this notice.  Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days.  (The time limit for filing a lawsuit based a claim under state law may be different.)*

20.     That fewer than ninety days have elapsed since the Plaintiff received since the Right to Sue on the Plaintiff's charge of discrimination.

## FACTUAL BACKGROUND

21.     That the Plaintiff is a resident of the United States and at all relevant times the Plaintiff resided in South Carolina.

22.     That the Plaintiff is an African American female over the age of fifty.  The Plaintiff has an extensive education and experience background in health care.  The Plaintiff holds a

Bachelor's degree in Human Services and a Master's degree in Public Health Administration. The Plaintiff has also been an LPN since 2006.

23. The Defendant is a Hospital Health Care Facility providing care to individuals who are uninsured or underinsured. The Defendant coordinates care to ensure treatment. The Defendant has established the Tidelands Community Care Network.

24. That the Plaintiff was hired on November 15, 2015, as a Care Coordinator received twelve pay increases.

25. In December of 2019, the Plaintiff was promoted to Tidelands Community Care Network Manager. As the manager the Plaintiff was directly supervised by Robyn Karoly, Assistant Director.

26. That the Plaintiff was issued policies and procedures regarding her employment with the Defendant. The Polices included an anti-discrimination policy.

27. The Plaintiff was considered an exemplary employee with no discipline in her file. The Plaintiff received excellent evaluations and pay raises during her employment.

28. From December 2020 to December 2022, the Plaintiff was required to perform the functions of her position as TCCN Manager as well as the position of a hourly palliative coordinator position due to the individual leaving and the Defendant refusing to hire a replacement. The Plaintiff was further required to attend tumor boards twice a week, cover palliative care patients needs, and complete intake with palliative care patients, provide follow-up and home visits. The Plaintiff did not receive extra pay for performing these duties. The Plaintiff worked several hours of overtime as an hourly employee along with her salaried position but was not compensated for her overtime.

29. On January 5, 2022, it was announced by Kelly Kaminski, Senior Director of Heath Resources that Erin Walters would be joining the team as the operations manager overseeing the support services unit and reporting to Robyn Karoly on January 17, 2022. Walters comes to Tidelands after her most recent position as Operations Director for Habitat for Humanity. Walters had management experience in general management, store management and operations management for nonprofits including The North Face Store Manager, and Gap, Inc. Store manager.

30. Walters is a Caucasian woman under the age of 40 would be joining the office. Walters job duties and responsibilities were similar to those assigned to the Plaintiff. Walters would be compiling and comparing data for the TCCN unit.

31. The Plaintiff was aware of Walters duties and responsibilities due to the fact that the TCCN Unit had frequent meetings to the TCCN unit to discuss the information required to be compiled and compared.

32. On April 26, 2022, the Plaintiff went to the Assistant Director and Director to discuss the fact that her FMLA had been coded wrong and needed to be corrected. Robyn Karoly and Kelly Kaminski failed and refused to correct the code and stated that it would have to remain. However, the Payroll manager informed them that it could be fixed and needed to be fixed as the Plaintiff was on Short Term Disability. The Plaintiff's complaints in the failure to properly handle her FMLA started a trend that brought the culture of discrimination at Tideland to the forefront of the Plaintiff's employment.

33. On June 14, 2022, a threat from a patient was received. As a result of that threat the policy of the Defendant changed, that all doors leading to the building needed to remain locked

and it was staffs' responsibility to ensure that the doors were closed and locked. The Plaintiff was informed that she was required to prevent persons from entering the premises.

34.    On August 3, 2022, the Plaintiff alerted Robyn Karoly to a portion of the Leon Levine Foundation grant application needing to be completed via email. The portions that needed to be completed by Robyn and Jessica were related to financial information, financial trends and uploads regarding financial information. The Plaintiff specifically set forth the portions that needed to be completed, where they were located in the links, and how to complete them. The responsibility was Karoly's as the Director of her department.

35.    On August 19, 2022, Karoly sent an email regarding the Leon Levine Foundation report and her having a hard time knowing which questions have been filled in and are good to go here vs. old answers.

36.    On August 19, 2022, the Plaintiff responded to Karoly's email and specifically informed her the questions that were already responded to and the ones that needed to be addressed.

37.    On August 24, 2022, the plaintiff received a harassing email from her direct supervisor Robyn Karoly stating that she had not alerted Karoly to the information needing to be completed for Leon Levine Foundation and instructed the Plaintiff to complete it by August 25, 2022. These emails were typical of Karoly creating a hostile work environment for the Plaintiff since her complaints to Management regarding Karoly's failure to properly handle the Plaintiff's FMLA.

38.    On September 9, 2022, the Plaintiff received a harassing email form her direct supervisor Robyn Karoly Specialty referrals. Karoly failed and refused to perform the functions of her position and reassigned the requirements to the Plaintiff.

39.     On September 21, the Plaintiff received a harassing email from the Director Tidelands Community Care Network Kelly Kaminski and Robin Karoly, Assistant Director which stated that she was doing a report on a patient that refused to physically leave the building and wanted to know how the Plaintiff would prevent this in the future. The responsibility of the building and the security of the building was not the Plaintiff's responsibility, but Kaminski was harassing the Plaintiff due to a failure to perform her job.

40.     On September 22, 2022, the Plaintiff received a harassment email from her direct supervisor Robyn Karoly setting forth responsibilities that were outside the Plaintiff's job description in order to harass her and change the terms and conditions of her employment.

41.     On October 11, 2022, the Plaintiff received an email from Karoly reminding her that her action plan to get TCCN engagement rate up is due to her and Kelly on Friday. The Plaintiff was unable to increase the engagement rate due the policies of the Defendant. Even if the Plaintiff was able to obtain a number of new patients they would not be part of the system up and until charity approved them as 100% eligible. Therefore, Karoly's email was meant to harass the Plaintiff and insinuate the Plaintiff was failing to perform her position. This email created further hostility in the Plaintiff's work environment and was purely meant to harass the Plaintiff. Karoly's set forth what goals she wanted met and in what format.

42.     On October 12, 2022, Kaminski received an email as the Director to respond to a survey regarding Social Determinants of Health Screening and Community Health Worker Assessment, HOP Tools, Current practices and operations.

43.     On October 13, 2022, Kaminski sent an email requesting information regarding the Plaintiff and others on her team completing Annual Training for Leaders.

44.  On October 13, 2022, the Plaintiff received a harassing email from Kelly Kaminski regarding HOP compliance action plan. The Plan was assigned to Kaminski who failed and refused to complete. The Plan was then assigned to the Plaintiff to complete which was further retaliation for her complaints regarding disparate pay amount the races at the Defendant's facility. Kaminski put forth unreasonable expectations in the completion process. Kaminski assigned this to the Plaintiff in retaliation that affected the terms and conditions of her employment.

45.  On October 14, 2022, the Plaintiff received a harassing email from Human Resources Kelly Kaminski regarding job responsibilities that were not the Plaintiff again in an attempt reassign issues, change the Plaintiff's terms and conditions and create a hostile work environment for the Plaintiff's complaints.

46.  On October 21, 2022, Karoly decided that all goals needed to be in Smart Goal format in contradiction to previous requests. The change in format was to harass the Plaintiff and create a hostile work environment to stress the Plaintiff out regarding the terms and conditions of her employment in retaliation for her complaints regarding pay.

47.  On October 21, 2022, Kaminski sent a follow up email regarding Leadership Training when all information is available via the Defendant's operating program. Kaminski sent the email to harass the Plaintiff while she was an event.

48.  On October 24, 2022, the Plaintiff became aware that Walters was hired at a higher rate of salary with less education, management experience and no medical background.

49.  On October 25, 2022, the Plaintiff consulted with EAP. The Plaintiff's health was suffering from Robyn Karoly and Kelly Kaminski. The Licensed Professional Counselor, Frank Clemmons, recommended an intervention between the Director and the Plaintiff. The

Plaintiff's LPC removed the Plaintiff from the work situation immediately due to increased anxiety, insomnia, stress, and increased blood pressure. The Plaintiff was immediately placed on three medications to attempt to decrease her stress, lower her blood pressure, allow her to sleep, decrease her stress and anxiety that was caused by her work environment

50.     On November 22, 2022, the Defendant had a facilitator come into the Defendant's facility to address the work environment and other issues. The results were not favorable to senior leadership in the department.

51.     On December 2, 2022, the NAACP met with the Tidelands Health Human Resources department concerning mistreatment, retaliation, and pay inequities among African American Employees at the Defendant's facilities. The Plaintiff participated in this meeting with the Human Resources Chief Officer, Jeremy Stephens. Stephens statement to the NAACP and the Plaintiff was that he was not in any legal jeopardy because it was not illegal in South Carolina to have a mean boss. The President of the NAACP at the time Marvin Neal reminded Stephens that the NAACP was in the meeting with him to address much more than just the complaint of a mean boss. During this meeting the Plaintiff realized that with her medical conditions, the Defendant's overall culture and the failure of the Human Resources Chief Officer to even address the Plaintiff's complaints seriously that she would not be able to return to the hostile work environment.

52.     The Plaintiff resigned her employment with the Defendant on December 7, 2022, due to the harassment she was receiving as a result of her complaints, the failure of the Defendant to accept or address her concerns, and the overall hostile work environment.

53.     The Plaintiff's letter of resignation set forth the following:

*12/07/22*
*Dear TCCN Senior Leadership,*

*It is with regret that I'm writing to give you my formal notice of immediate resignation from my role as TCCN manager at Tidelands Health, effective immediately on today 12/07/22. Please accept my apologies for not being able to provide a four-week notice but I am advised by my clinicians to protect my mental and physical health at this time.*

*In the past two years I have been tasked with assisting in the community with testing for COVID 19; I have covered additional tumors boards, 2 to 3 per month for about 10 consecutive months, as well as followed palliative care cases, provided ACP education, and remained the primary on the COC for cancer services, after Dio Godbold the fulltime palliative care coordinator resigned. I have assisted with running the COVID 19 clinic in Georgetown; assisted with other flu and COVID 19 clinics in the community; managed and completed the ACP grant requirements; assisted with Leon Levine grant requirements and managed the reporting and outcomes of the Duke Endowment grant requirements; I have attended 20+ community events withing the last year; managed payroll; attended behavioral health collaborate meetings; all while operating as the TCCN manager and helping to create care pathways and build templates to document in Meditech Ambulatory, along with other assigned task. As well as, successfully completed assignments given to me on short notice with quick turnaround times; and as a salary employee I was only compensated as the TCCN manager, while simultaneously working in hourly roles.*

*The heavy workload and additional time spent after office hours trying to complete the assigned tasks has taken a tremendous toll on my psychological and physical health. Due to the lack of healthy boundaries around work assignments, along the bullying, harassment, poor management and retaliatory behavior within the CHR department I have been pushed to the point of burnout and exhaustion. The disrespectful emails received from senior leadership in CHR has created a lack of trust for me and have made me feel as if there is no room for coaching and support for employee growth in my role, as well as no room to make mistakes, which leaves me feeling unappreciated and psychologically unsafe in my current role.*

*As I have reviewed some of the tasks assigned to me, I noticed that the original goals and methodology were often deliberately changed from the initial assignments, which results in increasing anxiety for me. The entire CHR department has become disengaged, there has been a high turnover in this department since the middle of 2019 until present (40+ employees). All the negative behaviors have led to a toxic work environment with trauma and resulted in me experiencing reduced job satisfaction and increased work-related stress that has affected my overall health, which leads me to regretfully resign from my position.*

*I will surely miss my TCCN co-workers who I have been privileged to work alongside and I am appreciative of the opportunity to have serve the community where I was born and raised as it has been a great opportunity for me to give back to the community, but in this case the negative human impact (staff turnover, low job satisfaction and work-related stress) affects my overall health in an adverse way. I apologize for such brief notice, but I must take this time to care for myself.*

*Regards,*

*Shawneequa Sumpter-Gibson*

54. During her exit interview the Plaintiff discussed the issues of her employment with Monica Grey, the VP of Tidelands Health Community Resource Center. The Plaintiff discussed how the rate of pay for Walters was determined when the positions were similar, and the Plaintiff had more education. Grey informed the Plaintiff that pay is an HR decision. Grey stated that she did not understand why the Plaintiff wanted to know someone else's salary. The Plaintiff explained that she had gone to the copier to make copies and discovered grant paperwork that contained reporting information where Walters was making significantly more money, with less experience and education that the Plaintiff. Grey's response to the Plaintiff was that she must have read that grant paperwork wrong. The Plaintiff informed Grey that the Plaintiff was currently managing a $500,000.00 grant in the same department from the Duke Endowment, and she knows how to read grant paperwork. Grey did not address the issue or attempt to discuss the issues any further.

55. During the Plaintiff's employment, the Plaintiff suffered discrimination based on her race, and age, retaliation for her complaints, a general hostile work environment and retaliatory hostile work environment for her complaint regarding pay disparagement in violation of the Defendants' policies and procedures, State and Federal law.

56. That each of the reasons provided by the Defendant for not fixing the Plaintiff's work environment was meant to harass the Plaintiff, demean the Plaintiff, harm the Plaintiff, and retaliate against the Plaintiff.

57. That Defendant wrongfully discriminated against the Plaintiff in violation of Title VII 42 U.S.C. 2000, 42 U.S.C. 1981 and the Age Discrimination in Employment Act.

58. That each of the reasons presented by the Defendant for failing to properly pay the Plaintiff, eliminate the harassment, correct the retaliatory hostile work environment were pretextual.

The Defendant has published a false narrative regarding the Plaintiff's employment in order to perpetuate a discriminatory retaliatory, and hostile work environment that has led to severe emotional distress.

59.     The Defendant's actions described herein were intentional and inflicted upon Plaintiff severe mental and emotional distress.

60.     As a result of Defendant's actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity, reputation, and other intangible injuries for all of which she should be compensated.

61.     That the Defendant is the direct and proximate cause of injury to the Plaintiff.

62.     The Defendant engaged in policies and practices which willfully, intentionally, and unlawfully discriminated against Plaintiff on the basis of her race in violation of Title VII and 42 U.S.C. 1981.

63.     That the Defendant, treated the Plaintiff significantly differently based on her race and age.

64.     That the Plaintiff treated younger Caucasian employees more favorably with better pay, no harassment, and better work assignments.

65.     That the Defendant's actions towards the Plaintiff violated Federal and State specifically Title VII, 42 U.S.C. 1981, and ADEA.

66.     That the Defendant is the direct and proximate cause of damage to the Plaintiff.

67.     That, as a direct and proximate result of the Defendant's intentional unlawful actions towards the Plaintiff based on the Plaintiff's race and age, the Plaintiff:

    a.     suffered severe emotional distress;

    b.     suffered future lost wages and future lost benefits;

    c.      suffered economic damages;

    d.      Loss of employment;

    e.      Loss of Future employment;

    f.      incurred attorney fees for this action;

    g.      incurred costs of this action; and

    h.      will incur future attorney fees and costs.

68.    That the Plaintiff is entitled to an award of damages in the amount of actual damages, compensatory damages, consequential damages, punitive damages, attorney's fees previous, future and present, costs of previous future and this action, and other damages such as this Honorable Court deems appropriate and just.

69.    That the Defendant evaluated the plaintiff differently based on her complaints.

70.    That the Plaintiff's employer discriminated and inflicted a retaliatory hostile work environment on the Plaintiff based on her race in retaliation for her complaints regarding pay in violation of 42 U.S.C. Section 1981.

71.    That the Defendant is the proximate and direct cause of damage to the Plaintiff.

72.    Pursuant to 42 U.S.C. Section 1981A, Plaintiff also seeks compensatory damages including future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses.

73.    Pursuant to 42 U.S.C. Section 1981A, Plaintiff also seeks to recover punitive damages from Defendant for discriminating against Plaintiff with malice or with reckless indifference to Plaintiff's federal protected rights.

74.    Plaintiff seek all back pay and fringe benefits to which she is entitled under 29 U.S.C. Section 626(b), as well future damages and liquidated damages under the act.

75.    As Plaintiff is seeking damages under 42 U.S.C. 1981A and 29 U.S.C. Section 626(b) Plaintiff also demands a jury trial as to all claims properly tried to a jury pursuant to 42 U.S.C. Section 1981(A)(c)(1) and pursuant to 29 U.S.C. Section 626 (c)(2).

76.    Pursuant to 42 U.S.C. Section 1988(c) and 42 U.S.C. Section 2000e-5(k), Plaintiff seeks her attorney's fees in bringing this action, including expert witness fees, and further seeks her costs associated with bringing this action pursuant to 28 U.S.C. 1920 of the Federal Rules of Civil Procedure, along with prejudgment and post-judgment interest pursuant to the law.

## FOR A FIRST CAUSE OF ACTION

## RACE DISCRIMINATION IN VIOLATION OF TITLE VII AND 42 U.S.C. 1981

77.    That Paragraphs one (1) through seventy-six (76) are hereby incorporated verbatim.

78.    That the Plaintiff was an employee according to the law of the State of South Carolina, Federal Law including but not limited to Title VII and 42 U.S.C. 1981.

79.    The Defendant is an employer within the applicable State and Federal Laws.

80.    The Plaintiff was subjected to differential treatment based on her race.

81.    The Plaintiff was not treated fairly or equally as other Caucasians.

82.    The Plaintiff was not paid equally as other Caucasians.

83.    The Defendant's actions described herein were intentional and inflicted upon Plaintiff to insure severe mental and emotional distress.

84.    As a result of Defendant's actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity, and other intangible injuries for all of which she should be compensated.

85.    That as a result of the Defendant's failure to address the Plaintiff's situation despite her excellent performance led to the Plaintiff suffering severe health complication and being constructively discharged from her employment.

86.    That the Defendant is the direct and proximate cause of injury to the Plaintiff discriminating against her based on her race.

87.    That the Plaintiff is entitled to an award of damages from the Defendant. That the Plaintiff is entitled to recover damages from the Defendant in the amount of actual damages, consequential damages, punitive damages, reasonable attorney's fees, the costs of this action and all other damages available pursuant to Title VII and 42 U.S.C. 1981.

## FOR A SECOND CAUSE OF ACTION

## AGE DISCRIMINATION IN EMPLOYMENT ACT

88.    That paragraphs one through eighty-seven (87)  are hereby incorporated verbatim.

89.    That the Plaintiff was subjected Age Discrimination while employed with the Defendant.

90.    That the Defendant, treated the Plaintiff significantly differently based on her age. Younger employees were paid more, not harassed, and treated to more favorable assignments.

91.    That the Defendant, treated the Plaintiff significantly different than it treated younger employees.  That the Defendant did not discipline younger employees for actions that would have been terminable offesnses.  That the Defendant treated younger employees more favorably with better assignments, and better pay.

92.    That the Defendant's actions towards the Plaintiff violated the law.

93.    That the Defendant is the direct and proximate cause of damage to the Plaintiff.

94. That, as a direct and proximate result of the Defendant's intentional unlawful actions towards the Plaintiff based on the Plaintiff's age, the Plaintiff:

    a.    suffered severe emotional distress;

    b.    suffered future lost wages and future lost benefits;

    c.    suffered economic damages;

    d.    Loss of employment;

    e.    Loss of Future employment;

    f.    incurred attorney fees for this action;

    g.    incurred costs of this action; and

    h.    will incur future attorney fees and costs.

95. That the Plaintiff is entitled to an award of damages in the amount of actual damages, compensatory damages, consequential damages, punitive damages, attorney's fees previous, future and present, costs of previous future and this action, and other damages such as this Honorable Court deems appropriate and just.

## FOR A THIRD CAUSE OF ACTION

## RETALIATION FOR COMPLAINTS REGARDING RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. 1981

96. That Paragraphs one (1) through ninety-five (95) are hereby incorporated verbatim.

97. That the Plaintiff participated in a protected act when she reported racial discrimination, age discrimination, racial harassment, and hostile work environment.

98. The Plaintiff clearly reported the discrimination, harassment, and retaliation she was suffering on several occasions as documented above.

99.   That the Defendants allowed the Plaintiff to be discriminated against based on her race and age in violation of the Defendants' own policies and procedures.

100.  That the Plaintiff reported the discrimination. That the Defendant failed and refused to correct the behavior. That the behavior became worse after the Plaintiff's reports.

101.  That the Defendant allowed the Plaintiff's supervisor to treat Caucasian employees more favorably without repercussions.

102.  That the Plaintiff was terminated from her employment after her complaints. That the Plaintiff was further subjected to worse behaviors after she complained to upper management. The Plaintiff was clearly bullied as a result of being an African American and performing all aspects of her positions.

103.  That the reasons provided by the Defendants as the reasons for her termination were pretextual and created by others who discriminated against the Plaintiff.

104.  That the Defendants discriminated against the plaintiff based on her race and age.

105.  That the Defendants took adverse employment action against the Plaintiff by:

    (a)   Failing to protect the Plaintiff from a Racially Hostile work environment;

    (b)   Failing to protect the Plaintiff from Age Discrimination/hostile work environment; and

    (b)   Refusing to enforce its own policies concerning discipline of employees engaging in harassing comments.

106.  That the Defendants subjected the Plaintiff to discrimination in violation of the law.

107.  That as a result of the Plaintiff's complaints the Plaintiff suffered retaliation for each of her complaints.

108. As a result of the Plaintiff's complaints regarding discrimination based on her Race, Age, Retaliation, and hostile work environment based on her previous complaints the Defendant retaliated against the Plaintiff.

109. The Defendant's actions described herein were intentional and inflicted upon Plaintiff to insure severe mental and emotional distress.

110. As a result of Defendant's actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity, and other intangible injuries for all of which she should be compensated.

111. That the Defendant is the direct and proximate cause of injury to the Plaintiff.

112. That the Plaintiff is entitled to an award of damages from the Defendant. That the Plaintiff is entitled to recover damages from the Defendant in the amount of actual damages, consequential damages, punitive damages, reasonable attorney's fees, the costs of this action and all other damages available pursuant to Title VII and 42 U.S.C. 1981.

## FOR A FOURTH CAUSE OF ACTION

## HOSTILE WORK ENVIRONMENT/RETALIATORY HOSTILE WORK ENVIRONMENT IN VIOLATION OF 42 U.S.C. 1981

113. That Paragraphs one (1) through one hundred and nineteen (119) are hereby incorporated verbatim.

114. That the Plaintiff was an employee of the Defendants.

115. That the Defendants are employers in accordance with Title VII, 42 U.S.C. 1981 and ADEA.

116.    Each and every action taken by the Defendants' employees instituted a work environment that no reasonable person would subject themselves to.

117.    That the Defendants subjected the Plaintiff to a hostile work environment.

118.    That the Plaintiff's work environment was abusive, to the point of severe and pervasive.

119.    The Plaintiff was subjected to discrimination based on her Race and Age.

120.    That the Defendant failed and refused to address the situation.

121.    That the Defendant's actions toward the Plaintiff led to the Plaintiff resigning her employment as no reasonable person should have been subjected to the action.

122.    As set forth above, the Plaintiff was harassed my management and others who intentionally and purposefully subjected to a severe and pervasive work environment.

123.    That the Plaintiff suffered severe emotional distress as a result of the Defendant's hostile work environment based on the Plaintiff's Race and Age.

124.    That the Plaintiff's severe emotional distress was foreseeable as a result of the severe and pervasive work environment that the Defendant subjected the Plaintiff.

125.    That the Plaintiff has been damaged as a result of the Defendant work environment.

126.    That the Defendant is the direct and proximate cause of damage to the Plaintiff.

127.    That the Plaintiff is entitled to an award of damages from the Defendant.  That the Plaintiff is entitled to recover damages from the Defendant in the amount of actual damages, consequential damages, punitive damages, reasonable attorney's fees, the costs of this action and all other damages available pursuant to Title VII, 42 U.S.C. 1981 and the ADEA.

## **PRAYER FOR RELIEF**

WHEREFORE plaintiff prays that this Honorable Court:

   A.  Accept jurisdiction over this matter, including the pendent claim;

B.  Empanel a jury to hear and decide all questions of fact;

C.  Award the Plaintiff lost wages, future lost wages, lost benefits and future lost benefits;

D.  Award to plaintiff compensatory and consequential damages against the defendant;

E.  Award to plaintiff punitive damages against the defendant for their malicious and spiteful pattern of age and race discrimination;

F.   Award to plaintiff All damages available to the plaintiff against the defendant for their malicious discrimination against the plaintiff in violation of the Title VII and 42 U.S.C. 1981;

G.   Award of all damages available to the Plaintiff against the Defendant for their malicious discrimiantion against the Plaintiff in violation of the ADEA.

H.  Award to plaintiff the reasonable attorneys' fees and costs incurred in the prosecution of this matter;

I.   Award all damages available to the Plaintiff pursuant to Federal and State Law;

J.   Permanently enjoin the defendants, their assigns, successors, agents, employees and those acting in concert with them from engaging in sexual discrimination, disparate treatment or retaliation against plaintiff and

K.  Enter any other order the interests of justice and equity require.

HUNT LAW LLC

*s/Bonnie Travaglio Hunt*
Bonnie Travaglio Hunt
HUNT LAW LLC
4000 Faber Place Drive, Suite 300
North Charleston SC 29405
Post Office Box 1845, Goose Creek, SC 29445
(843)553-8709

Dated: December 18, 2024